UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

PETER A. SHERMAN,                          )
                                           )
            Plaintiff,                     )
                                           )
      vs.                                  )         3:17CV909-PPS
                                           )
NANCY BERRYHILL, Acting Commissioner       )
of the Social Security Administration,     )
                                           )
            Defendant.                     )

**OPINION AND ORDER**

Peter A. Sherman appeals the denial of his application for Social Security disability benefits. Sherman is a high school graduate who has worked as a sales representative in the lumber department at a "big box" hardware store, in a train yard as a crew member and operations manager, and as an installation manager for a home security company. [AR at 33, 53, 55-56, 78-79, 81.][1] He filed an application for Social Security disability benefits on April 15, 2014, alleging that he became disabled as of May 1, 2013, when he was 39 years old. [AR at 22.] As of 2014, Sherman was a full-time student at Indiana University South Bend, where he was pursuing a degree in physics. He later withdrew from IUSB for health reasons. [AR at 82-84.] After a hearing, an administrative law judge denied Sherman's application for benefits. [AR at 35.] Although the ALJ found that Sherman has severe impairments of Type II diabetes with

---

[1] The administrative record [AR] is found in the court record at docket entry 7, and consists of 703 pages. I cite to the pages of this AR according to the Social Security Administration's Bates stamp numbers rather than the court's Electronic Case Filing page number.

neuropathy, obesity, psoriatic arthropathy, and Morton's Neuroma, the ALJ ultimately found that Sherman has the residual functional capacity to perform light work with certain limitations. [AR at 24, 28.]

Sherman asks me to reverse the ALJ's decision and find that he was disabled as of May 1, 2013 or remand for further proceedings by the Social Security Administration. My review of the ALJ's decision is deferential. I must affirm it if it is supported by substantial evidence, meaning "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (citation omitted). I can't reweigh the evidence or substitute my judgment for that of the ALJ. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). But these standards do not mean that I "will simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

When considering the evidence, "an ALJ is not required to provide a complete and written evaluation of every piece of testimony and evidence, but 'must build a logical bridge from the evidence to his conclusion.'" *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015), quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005). This means that an ALJ's decision must offer an explanation of the rationale from the evidence to his or her conclusions "sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014).

## Discussion

Sherman raises two issues in this appeal. The first challenges the ALJ's finding that Sherman was capable of standing and walking at least six hours in an eight-hour workday. [DE 10 at 11.] Sherman's second argument challenges the ALJ's conclusions concerning the evidence of carpal tunnel syndrome in his hands. [DE 10 at 15.]

## Standing and Walking

The ALJ found that Sherman can occasionally climb ramps and stairs, and occasionally balance, stoop, kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds. [AR at 28.] He found that Sherman "must frequently alternate between sitting and standing without being off task during an 8-hour workday." [*Id*.] Sherman argues that "[t]he finding that Mr. Sherman could perform light work where he would be required to stand and walk at least six out of eight hours in the day is not supported by substantial evidence." [DE 10 at 11.]

The federal regulation that defines "light work" for purposes of Social Security provides that a job in this category requires a "good deal of walking or standing," or if it involves sitting "most of the time" also involves "some pushing and pulling of arm or leg controls." C.F.R. §404.1567(b). Further guidance from the Social Security Administration explains that the "frequent lifting or carrying" of up to 10 pounds required by light work means that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6. So the ALJ's determination that Sherman has the residual

functional capacity to perform light work implicitly includes a finding that he can stand or walk, off and on, for approximately 6 hours during an 8-hour workday.

To support his challenge to that conclusion, Sherman points to his history of diabetic neuropathy affecting his legs and feet, his testimony about his use of a cane and the need to elevate his legs and feet for pain relief, and his risk of falling due to dizzy spells. [DE 10 at 11-14.] In response, the Commissioner recaps the portions of the medical record cited by the ALJ in making her determination concerning Sherman's ability to stand and walk. This includes evidence of improved control of Sherman's diabetes through medication, and pain management treatment for Sherman's diabetic neuropathy, which he reported reduced his pain to a level of 5 to 6 out of 10. [DE 15 at 4-5; AR at 31.] The ALJ concluded that this medical evidence did "not support the claimant's allegations of very severe pain from neuropathy that keeps him in a recliner all day and prevents him from doing any activities of daily living." [AR at 31.]

The evidence on this issue is not one-sided, and if I were the decisionmaker in the first instance, I might have decided that Sherman's ability to stand and walk during an 8-hour work day is more limited than the ALJ found, considering his history of treatment for neuropathy foot and leg pain [AR at 295-301; 313-16; 319-23; 340-42; 353-56; 405-06; 431-35; 527; 554-59; 570-75; 587-93; 603-08; 609-13; 620-25; 630-34; 639-43; 667-71; 677-79; 686-90; 691-96; 697], as well as Sherman's own evaluation of his neuropathy pain [AR at 28-29], the recommendation of treatment with a spinal cord stimulator not yet attempted [AR at 29], and Sherman's reports of falls and his reliance on a cane [AR

4

at 29]. But as I am persuaded that reversal is required on another ground, I need consider the matter no further.

**Carpal Tunnel Syndrome**

Sherman's second challenge is to the ALJ's failure to find that his carpal tunnel syndrome constituted a severe impairment, and failure to take the carpal tunnel syndrome into account in determining his ability to work. The medical records reflect that Dr. Andrey Seluzhitskiy noted as early as September 19, 2014 that Sherman suffered from carpal tunnel syndrome that was "acute" and "inadequately controlled." [AR at 667.] Dr. Seluzhitskiy attempted treatment by cortisone injections but those provided relief for only a day at a time. [AR at 535.] On referral from Dr. Seluzhitskiy, Sherman told Dr. Sylvan Clarke on April 22, 2016 that he had experienced bilateral hand pain for approximately 20 years, and had numbness, tingling and weakness in his hands that caused difficulty lifting objects. [AR at 535.] Sherman testified before the ALJ to difficulty with manual tasks due to his CTS. [AR at 64-65.] Dr. Clarke advised Sherman on treatment options for his carpal tunnel syndrome, recommended electrodiagnostic testing, and scheduled a follow-up visit. [AR at 534.] Electrodiagnostic testing was performed on May 11, 2016 and indicated Sherman had bilateral CTS. [AR at 523.] On his return visit to Dr. Clarke on May 20, 2016, surgical treatment and its risks were discussed in depth, with Sherman opting to defer surgery until his diabetes was better controlled. [AR at 529.] Ultimately, Sherman had the surgery on his non-dominant left hand the week prior to the ALJ's hearing in September, 2016. [AR at 64.]

5

At step two of her analysis concerning Sherman's medically determinable impairments, the ALJ noted that the records of Sherman's primary care doctor, Dr. Andrey P. Seluzhitskiy, dated November 7, 2014 reflect that severe carpal tunnel symptoms were improved after injections performed on October 17 and September 19, although there was no EMG at that time to confirm the nature of the condition. [AR at 24, 656, 662, 669.] The ALJ then remarked upon the "gap in treatment of any upper extremity problems of about two years" until 2016 when carpal tunnel syndrome was confirmed by an EMG in May 2016, and surgical treatment was discussed. [AR at 24-25.] The ALJ found Sherman's carpal tunnel syndrome "to be a non-severe impairment based upon the recency of the EMG and surgery, as it does not satisfy the 12-month durational requirement for a severe impairment." [AR at 25.] Sherman argues that this reasoning constituted "impermissibly playing doctor," and that by "making a medical determination" the ALJ erred in failing to accommodate any limitations Sherman may have as a result of carpal tunnel syndrome. [DE 10 at 17.]

The Commissioner's response, in a nutshell, is that it doesn't matter whether the ALJ found Sherman's carpal tunnel syndrome to be severe. The explanation given is that, once the ALJ finds *any* impairments to be severe, the evaluation of disability proceeds in the same manner, with all impairments – both severe and non-severe – taken into account in determining the claimant's residual functional capacity. [DE 15 at 5-6.] The ALJ found that Sherman had severe impairments of Type II diabetes with neuropathy, obesity, psoriatic arthropathy, and Morton's Neuroma. In addition to the

6

four severe impairments, the ALJ also found that Sherman had four non-severe impairments: sleep apnea, hypogonadism, carpal tunnel syndrome, and degenerative disc disease. [AR at 28.]

The Seventh Circuit has explained that "the step two determination of severity is 'merely a threshold requirement.'" *Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010), quoting *Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir. 1999). *See also Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012) (determining whether impairments are severe at Step 2 "is a threshold issue only"). This principle is at the heart of my conclusion that a remand is required in this case because the ALJ does not appear to have taken the non-severe impairment of carpal tunnel syndrome into account in the later critical stage of the RFC analysis.

A claimant's residual functional capacity, or RFC, "describes the maximum she can do in a work setting despite her mental and physical limitations." *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014). "When determining a claimant's RFC, the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010), citing 20 C.F.R. §404.1523(c). *See also Thomas*, 745 F.3d at 807. The importance of this requirement to consider *all* limitations is such that "[a] failure to fully consider the impact of non-severe impairments requires reversal." *Denton*, 596 F.3d at 423, citing *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).

7

If the record does not show that the ALJ considered all of a claimant's impairments "in concert," a court "cannot say that the ALJ built the required 'accurate and logical bridge' between the evidence and her conclusion." *Thomas*, 745 F.3d at 807, quoting *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009). In order to determine Sherman's ability to work, the ALJ's analysis was required to include both severe and non-severe impairments "to determine their collective effect" on his ability to work. *Thomas*, 745 F.3d at 807. "The ALJ 'may not select and discuss only that evidence that favors [her] ultimate conclusion,' [*Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)], but 'must confront the evidence that does not support [her] conclusion and explain why it was rejected. *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004).'" *Stephens v. Berryhill*, 888 F.3d 323, 329 (7th Cir. 2018). The ALJ's analysis of Sherman's RFC does not reflect consideration of his carpal tunnel syndrome and its potential impact on his ability to perform the full range of light work, including positions such as ticket taker, mail clerk and office clerk, which the ALJ listed as examples of occupations Sherman is capable of performing. [AR at 34.] This omission requires reversal for further consideration. *Denton*, 596 F.3d at 423.

## Conclusion

My role is not to determine from scratch whether or not Sherman is disabled and entitled to benefits. Instead, my review of the ALJ's findings is deferential, to determine whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence. *Shideler v. Astrue*, 688 F.3d at 310; *Castile v. Astrue*,

8

617 F.3d 923, 926 (7th Cir. 2010); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). Because the ALJ failed to demonstrate that she took *all* of Sherman's impairments – both severe and non-severe — into account in determining his capacity to work, substantial evidence does not support the Commissioner's conclusion that Sherman is not disabled. For the reasons I've explained, the ALJ failed to build a logical bridge from the evidence to her conclusion that Sherman does not qualify for disability. The Commissioner's final decision must be reversed.

**ACCORDINGLY:**

The final decision of the Commissioner of Social Security denying plaintiff Peter A. Sherman's application for Social Security Disability benefits is REVERSED, and the matter is remanded to the Commissioner for further proceedings consistent with this opinion.

The Clerk shall enter judgment in favor of plaintiff and against the defendant.

**SO ORDERED**.

ENTERED: January 17, 2019.

/s/ Philip P. Simon
**PHILIP P. SIMON, JUDGE**